IN RE SLABAUGH.

(No. 83AP-1152—Decided May 10, 1984.)

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, *Ms. Deborah A. Piperni* and *Mr. Leslie B. Suinford, Jr.,* for appellee Ohio Department of Mental Health.

*Mr. Theodore R. Kern* and *Ohio Legal Rights Service,* for appellant.

NORRIS, J. Appellant, Robert Slabaugh, appeals from an order of the trial court finding him to be a mentally ill person subject to hospitalization and ordering him hospitalized at the Central Ohio Psychiatric Hospital for a period not to exceed ninety days.

He raises three assignments of error:

"1. The probate court referee erred in not granting appellant a continuance to consult with counsel of his choice prior to the full commitment hearing.

"2. Appellant was denied effective assistance of counsel at the probable cause and full commitment hearings because his court-appointed representative failed to comply with essential standards of effective advocacy.

"3. Appellant was committed in accordance with Ohio Revised Code § 5122.01(B)(4), which is unconstitutionally vague and overbroad, and therefore does not grant the probate court jurisdiction to order an involuntary commitment."

In his third assignment of error, appellant contends that the statute under which he was involuntarily hospitalized is unconstitutional. The relevant portion of R.C. 5122.01 follows:

"As used in Chapter 5122. of the Revised Code:

"(A) 'Mental illness' means a substantial disorder of thought, mood, perception, orientation, or memory that grossly impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life.

"(B) 'Mentally ill person subject to hospitalization by court order' means a mentally ill person who, because of his illness:

"* * *

"(3) Represents a substantial and immediate risk of serious physical impairment or injury to himself as manifested by evidence that he is unable to provide for and is not providing for his basic physical needs because of his mental illness and that appropriate provision for such needs cannot be made immediately available in the community; or

"(4) Would benefit from treatment in a hospital for his mental illness and is in need of such treatment as manifested by evidence of behavior that creates a grave and imminent risk to substantial rights of others or himself."

Although the affidavit which initiated the hospitalization procedure cited both subdivisions (3) and (4) as the basis for appellant's hospitalization, as there was little effort to support the subdivision (3) ground with evidence, we must assume that the hospitalization was ordered on the basis of subdivision (4).

The essence of appellant's argument is that the evidence indicated no more than that his behavior was bothersome or annoying, and that if that is what is contemplated by R.C. 5122.01(B)(4), then the statute is unconstitutional, because the standard for involuntary

commitment must be a showing that he was mentally ill and posed a serious threat of substantial harm to himself or others, and that this threat had been evidenced by a recent overt act or threat.

We agree with appellant to the extent that he could not be confined merely because others found his conduct to be nothing more than bothersome or annoying. There is no constitutional basis for involuntarily confining a mentally ill person simply because he would benefit from hospitalization, if he is dangerous to no one (himself included), and he can live safely in freedom. This constitutional standard is violated if a mentally ill person is confined merely because his appearance or conduct arouses public intolerance or animosity. *O'Connor* v. *Donaldson* (1975), 422 U.S. 563. In addition, when a statute, such as R.C. 5122.01(B)(4), is measured against this constitutional standard, it will fail if it lacks ascertainable standards of conduct and is so vague, imprecise and indefinite that persons of common intelligence must necessarily guess at its meaning and differ as to its application. See *Columbus* v. *Thompson* (1971), 25 Ohio St. 2d 26 [54 O.O.2d 162]; *State* v. *Young* (1980), 62 Ohio St. 2d 370 [16 O.O.3d 416]. All legislative enactments enjoy a presumption of constitutionality. As to challenges to a statute based upon its alleged vagueness, an appellate court must apply all reasonable presumptions, interpretations and constructions which will render the statute constitutionally definite. *State* v. *Dorso* (1983), 4 Ohio St. 3d 60, at 61.

The statute is not void on its face—it requires that the mentally ill person pose a danger to himself or others, and defines with particularity standards which a person of common intelligence would comprehend as drawing a line between those mentally ill persons who pose a danger to the public or to themselves, and those who do not. In ad-dition, we do not believe, as contended by appellant, that a mentally ill person can be said to be dangerous only if there is evidence that the person recently committed a dangerous overt act or threatened one, although such evidence would certainly tend to establish that he was dangerous (and, in any event, as noted below, such evidence existed in this case).

When the standard found in the statute is applied, it must be adhered to strictly—a person whose conduct is merely bothersome or annoying does not manifest "behavior that creates a grave and imminent risk to substantial rights of others or himself." Accordingly, if the only evidence were that appellant threatened to engage in vexatious litigation and to persuade persons of high stature in the journalistic community to expose those whom he perceived as persecuting him, then the standard would not have been complied with. However, there was evidence of other conduct that went well beyond mere annoyance or bothersomeness.

For example, there was evidence that appellant had initially been transported to the state hospital after having created disturbances at a police station which resulted in his arrest for trespass; that upon his initial admission to the hospital he was in an agitated, belligerent, and confused state; that he initially refused to take medication; that he threatened the staff; that he was delusional and paranoid; that prior to the incident at the police station he had been involved in a fistfight which resulted in injuries requiring hospital emergency room care; that he was volatile, had a low tolerance to stress, and responded out of proportion when subjected to it; that he had delusions of persecution; and that he would create problems in the community to the extent that he would be jailed or hospitalized. Accordingly, the trial court was warranted in finding, by clear and convinc-

ing evidence, that appellant was in need of treatment as manifested by evidence of behavior that created a grave and imminent risk to substantial rights of others or himself.

The third assignment of error is overruled.

The first assignment of error is well-taken. The statutory scheme provided by the involuntary hospitalization provisions of R.C. Chapter 5122 contemplates that a mentally ill person (referred to by the Revised Code as the "respondent") will be afforded the opportunity to be represented by counsel of his choice, and that, if he is unable to make a choice or is indigent, counsel will be appointed for him.

R.C. 5122.141(C) provides that, when an initial probable cause hearing is afforded by the court, the respondent "shall be informed that he may retain counsel," and that, if he is unable to obtain counsel, then, he will be represented at the hearing by court-appointed counsel.

Here, the affidavit instituting the action was filed on October 20, 1984, and on October 21 the trial court set the probable cause hearing for October 24, and appointed counsel for appellant "[u]pon the oral application of [appellant] and it further appearing to the Court that the said person is unable to obtain counsel or is indigent." On October 24, the court bailiff filed a statement saying that he had advised appellant on October 21 of his right to counsel. On that same date, October 24, he filed another document in which he said that he had on that date served an attorney selection form upon appellant; the selection portion is blank and unsigned by appellant. We note that it is uncontroverted that appellant was not present at the October 24 hearing, and that in his absence he was represented by court-appointed counsel.

Provision is also made for counsel at the full hearing:

"(2) The respondent has the right to attend the hearing and to be represented by counsel of his choice.

"(3) If the respondent is not represented by counsel, is absent from the hearing, and has not validly waived the right to counsel, the court shall appoint counsel immediately to represent him at the hearing * * *. If the court appoints counsel, * * * the court shall continue the case.

"(4) The respondent shall be informed that he may retain counsel * * *. If he is unable to obtain an attorney, he shall be represented by court-appointed counsel. * * *" (R.C. 5122.15[A][2], [3] and [4].)

The referee who presided over the full hearing on October 31 had not been present at the probable cause hearing. Appellant was present and protested his representation by the court-appointed attorney, saying that he had never before seen him. Nothing in the record affirmatively refutes this contention. Following a recess granted to court-appointed counsel in order that he might consult with appellant, counsel sought a continuance as appellant desired to be represented by the Ohio Legal Rights Service. The continuance was denied.

Under the circumstances of this case, it was an abuse of discretion to disallow the continuance. The statute clearly contemplates that, under circumstances like these, where a respondent enters his first appearance and is afforded his first opportunity to be advised of his right to counsel and to select counsel, a reasonably adequate opportunity must be afforded him to attempt to obtain counsel of his choice. Normally, of course, this first opportunity will be afforded at the probable cause hearing. It is only in the event that it appears to the court that he is unable to obtain counsel of his choice that the court may proceed with court-appointed counsel.

The first assignment of error is sustained.

Appellant's contention that he demanded that his court-appointed attorney represent him as a "zealous" advocate and he failed to do so, is not demonstrated by the record. This was, of course, a civil, not a criminal proceeding. When a person is alleged to be mentally ill and subject to hospitalization, it is readily comprehensible that he may desire that his counsel act to protect his rights by acting in what he believes to be his client's best interests. Obviously, those best interests may include hospitalization. There is nothing in the record to show that, instead, appellant wished his attorney to pursue his release to the exclusion of other considerations, even though his best interests might indicate hospitalization as the best course of action.

The second assignment of error is overruled.

The first assignment of error is sustained; the second and third assignments of error are overruled; the judgment of the trial court is reversed; and this cause is remanded to the trial court for a determination of whether appellant is still under restraint, and if so, for further proceedings according to law and consistent with this opinion.

*Judgment reversed and cause remanded with instructions.*

WHITESIDE and REILLY, JJ., concur.